# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **EMETHEUS L. WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 5:10-CV-398-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Emetheus L. Williams ("Mr. Williams") brings this action pursuant to 42 U.S.C. § 1614(a)(3)(A) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Secretary"), who denied his application for Disability Insurance Benefits ("DIB") and Supplemental Supplemental Security Income ("SSI").[1] Mr. Williams timely pursued and exhausted his administrative remedies available before

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI under the Social Security Act. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g); § 205(g) of the Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Williams was 50 years of age at the time of the hearing before the administrative law judge (hereinafter "ALJ") and 51 at the time that the decision was rendered. (Tr. 23, 31). He completed the tenth grade and received a GED. (Tr. 31). He has previously worked as a janitor, floor technician, and dishwasher. (Tr. 35, 109).

Mr. Williams claims that he has been unable to work since June 18, 2006, due to problems bending and picking up items as a result of rheumatoid arthritis. (Tr. 32, 35, 95). At the hearing, Mr. Williams stated that he could walk only about a block, that he could stand in one area for about five minutes, and that he could sit for about 25 to 30 minutes because of pain in his hips and feet. (Tr. 36). Mr. Williams claims that his legs and feet ache constantly, "24/7 like a toothache." (Tr. 95). Mr. Williams maintains that he had a hard time picking up a pen, he could not lift anything heavier than a gallon of milk, and he needed help getting dressed. (Tr. 35-37).

During the relevant period, Mr. Williams helped with the care of his young

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

daughter. (Tr. 104). He stated that he changed diapers when he was able and gave the child a bottle. (Tr. 104). Mr. Williams was able to wash the dishes, take out the trash, and, with his wife's assistance, unload groceries. (Tr. 103, 107). Mr. Williams had a driver's license and was able to drive. (Tr. 42).

Mr. Williams worked from November 2004, off-and-on, until June 18, 2006, as a janitor/floor technician for a cleaning service. (Tr. 109). Mr. Williams stopped working when he could no longer lift heavy items. (Tr. 33). After this job ended, Mr. Williams applied for and drew unemployment benefits for six months. (Tr. 32-33). Mr. Williams applied for DIB and SSI a month before his unemployment benefits ran out. (Tr. 33). When Mr. Williams filed for unemployment benefits, he told the unemployment benefits agency that he was ready, willing, and able to work. (Tr. 32).

Mr. Williams protectively applied for DIB and SSI on November 6, 2006. (Tr. 16). This application was denied by the Commissioner on January 31, 2007. (Tr. 16). Mr. Williams filed a written request for a hearing by an ALJ on February 22, 2007. (Tr. 16). A hearing was held on July 25, 2008. (Tr. 16). The ALJ subsequently denied Mr. Williams' application on October 1, 2008. (Tr. 13). On October 8, 2008, Mr. Williams filed a request for review of the ALJ's decision. (Tr. 9). The Appeals Council denied his application for review on December 18, 2009. (Tr. 5).

Mr. Williams filed a complaint with this court on February 24, 2010, which

asks for a judicial review of the ALJ's decision.[3] (Doc. 1). On July 12, 2010, Mr. Williams filed a brief (doc. 10) in support of his appeal, and on August 11, 2010, the Commissioner followed with his responsive brief (doc. 11). This court has carefully considered the record and, for the reasons stated below, affirms the decision of the ALJ.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*.

---

[3] The Appeals Council granted Mr. Williams an extension until April 2, 2010, to file a civil action in Federal District Court. (Tr. 1).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4]  The Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;

---

[4]  The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 17, 2011.

  (4) whether the claimant can perform her past work; and

  (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Phillips*, 357 F.3d at 1239.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

  The ALJ found Mr. Williams had not engaged in substantial gainful activity since the alleged onset date of his disability, *i.e.*, June 18, 2006. (Tr. 18). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

  Under step two, the ALJ concluded that "[t]he claimant has the following severe impairments: degenerative joint disease, status post bilateral total hip arthroplasties; degenerative disc disease of the lumbar spine; subacromial bursitis of

the right shoulder; accessory navicular bones." (Tr. 18). Accordingly, the ALJ concluded that Mr. Williams satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c). The ALJ further found that, although Mr. Williams alleges that he has rheumatoid arthritis, nothing in the medical evidence of record shows that he has this condition. (Tr. 18).

At step three, the ALJ determined that Mr. Williams did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19). Mr. Williams does not challenge this determination on appeal.

The ALJ then evaluated Mr. Williams's residual functional capacity ("RFC") at step four, and the claimant was found to have the following RFC:

> He can meet the exertional demands of light work provided he has the option to sit or stand at will and provided that he only occasionally use his lower extremities to operate foot controls. He occasionally can climb ramps and stairs. He occasionally can balance, kneel, crouch, and stoop. He cannot crawl. He cannot work on ladders, ropes, or scaffolds. He frequently can handle and perform fine manipulation and fingering. He cannot work with concentrated exposure to extreme cold, wetness/humidity, or vibration. He cannot work with exposure to hazardous machinery and unprotected heights. He occasionally can reach overhead.

(Tr. 20).[5] Further, the ALJ accepted the testimony of the vocational expert that at this

---

[5] The Regulations define light work as:

RFC-reduced light level, the claimant was unable to perform his past relevant employment as a floor supervisor, floor technician, cleaner/housekeeper, and janitor. (Tr. 23).

Because of the ALJ's finding that Mr. Williams was unable to perform past relevant work, it was necessary to continue to step five of the sequential analysis. (Tr. 23). Using the Medical-Vocational Guidelines as a framework and relying upon testimony from the vocational expert, the ALJ determined that Mr. Williams was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 23-24). Examples of such possible light jobs include employment as a inspector, tester, and sorter. (Tr. 24). Accordingly, the ALJ concluded Mr. Williams was not disabled as defined by the Social Security Act, and denied his DIB claim. (Tr. 24-25).

---

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

## **ANALYSIS**

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See id.* ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "<u>responsibility to scrutinize the record in its entirety</u> to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added).

In this appeal, Mr. Williams contends that the ALJ's pain and credibility findings were not based on substantial evidence. (Doc. 10 at 5-6). Mr. Williams also argues that the ALJ erred in determining that he could perform a reduced range of light work because a RFC for the full range of sedentary work would better comport with the evidence. (Doc. 10 at 6). Mr. Williams further argues that if the ALJ found he could only perform sedentary work, then the Medical-Vocational Guidelines

would direct a finding of disabled due to the lack of transferable skills.[6] (Doc. 10 at 6-7). In its review, the court finds that the ALJ's decision is due to be affirmed.

## I. THE ALJ EVALUATED THE CREDIBILITY OF MR. WILLIAMS'S SUBJECTIVE COMPLAINTS OF DISABLING PAIN UNDER THE APPROPRIATE LEGAL STANDARD AND THE DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

In order to satisfy the Eleventh Circuit pain standard, Mr. Williams must prove "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985)). Further, "[w]hile both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991).

---

[6] The Commissioner concedes that if Mr. Williams was limited to sedentary work Section 201.10 of the Medical-Vocational Guidelines would apply and direct a finding of disabled for someone of Mr. Williams's age because his past relevant work did not provide transferable skills. (Doc. 11 at 12 n.2). However, because substantial evidence supports the ALJ's finding that Mr. Williams could perform more than sedentary work, the transferability of job skills is not material in this case.

In this case, the ALJ determined that Mr. Williams had not met his burden. More specifically, the ALJ explained:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment.

(Tr. 21).

In *Wilson v. Barnhart*, the Eleventh Circuit reversed the District Court's decision that the ALJ improperly applied the pain standard and found that the ALJ's decision was supported by substantial evidence because "the ALJ made a reasonable decision to reject Wilson's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). As the Eleventh Circuit discussed the ALJ's adequate credibility findings in *Wilson*:

> Moreover, the ALJ specifically enunciated the following findings:
>
> On or before December 31, 1987, [the date last insured,] there is no objective clinical evidence of a condition which could reasonably be expected to produce the level of pain, lack of balance, numbness, weakness, lack of bowel control, fatigue, frequent need to eat, frequent need for bowel movements, headaches, need for additional rest during the day, or other symptoms which [Wilson] alleges precluded him from working. <u>Such allegations are also inconsistent with activities of daily living, limited use of pain medication and effectiveness of treatment, and therefore are not found credible to the extent claimant was</u>

<u>precluded from working</u>.

> Substantial evidence in the record supports the ALJ's finding, as the medical and other evidence simply was not consistent with Wilson's alleged disabling pain.  The evidence shows that from December 1986, a year prior to Wilson's date last insured, through 1992, Wilson made visits for regular vitamin B12 shots, received treatment for a rash, had moles removed, and had an isolated instance of testicular enlargement.  <u>It does not appear that Wilson complained of pain associated with the injuries received from his accident any time past his date last insured.  Thus, Wilson cannot establish that he continuously met the pain standard from on or before December 31, 1987, his date last insured, to within one year of his application date</u>.

*Id.*, 284 F.3d at 1226 (emphasis added).

Akin to the standard set forth in *Wilson*, the ALJ's partial negative credibility finding in this instance is supported by substantial evidence contained in the record.  For example, the ALJ observed that Mr. Williams's daily living activities, which included caring for a preschool child, driving, shopping, and watching television, were inconsistent with his subjective allegations of suffering from <u>totally</u> disabling pain.  (Tr. 22).  The ALJ also noted that, "although the claimant has had serious problems with his hips, the surgeries appear to have been successful because he has not returned to his surgeon with complaints."  (Tr. 22).

On September 10, 2007, Mr. Williams underwent a total left hip arthroplasty.  (Tr. 202).  He had previously undergone a right hip arthroplasty in April 2001 with a subsequent aspiration in May 2001.  (Tr. 138).  During Mr. Williams's left hip

arthroplasty, his surgeon noted that he was in "good general health" (Tr. 221) and that his right hip had done well since the replacement in 2001 (Tr. 202). Following surgery, Mr. Williams was comfortable and feeling well. (Tr. 220). Mr. Williams was discharged with "no pain" (Tr. 260) and it was noted that he did not require assistance with eating or drinking, bathing, dressing, going to the toilet, walking, changing positions, cooking, home maintenance, or driving (Tr. 238). In July 2008, Dr. Sparks reported that Mr. Williams had "some vague tenderness in the fatty part of his heel" and a "huge callus under the 3rd metatarsal head on the left," but noted that the x-rays revealed that "[t]he bones of the feet look amazingly normal" with "some mild arthritic changes in the tarsometatarsal joint bilaterally." (Tr. 283). The consultative examiner, Dr. Gill, noted that the only medication Mr. Williams took was Tylenol Arthritis pm. (Tr. 176). Dr. Gill observed that Mr. Williams was in no distress and that his arms were normal with a full range of motion and normal strength. (Tr. 177). Mr. Williams's hands looked normal, he could make a full fist, oppose his thumb and all his fingertips, and had a grip strength of 4/5. (Tr. 177). Mr. Williams's back was not tender and he was able to bend forward to 50 degrees and come erect again. (Tr. 177).

The ALJ also found persuasive the fact that Mr. Williams was drawing unemployment compensation benefits when he applied for disability insurance

benefits. The ALJ stated:

> While the receipt of unemployment compensation does not in and of itself contradict a finding of "disability," it represents a continuing assertion of the ability to work, and raises serious credibility issues. In weighing the credibility of the claimant's assertion that he is disabled, the receipt of unemployment compensation benefits is a factor.

(Tr. 22). The ALJ noted that Mr. Williams had not claimed that his condition had worsened since his unemployment benefits expired. (Tr. 23, 124). Alabama law specifically precludes eligibility for unemployment compensation benefits when the claimant is unemployed due to sickness or disability. Ala. Code § 25-4-78(2)(a)(4). The claimant must be "physically and mentally able to perform work of a character which he is qualified to perform by past experience or training, and he is available for such work" in order to be eligible to receive benefits. Ala. Code § 25-4-77(a)(3). Mr. Williams testified that he told the unemployment compensation agency that he was "ready, willing, and able to work" when he applied for benefits. (Tr. 32). This evidence supported the ALJ's RFC finding that Mr. Williams could perform limited light work. *See* 20 C.F.R. §§ 404.1529(C)(3)(I), 404.1571; *Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994) ("In addition, in order to be eligible for unemployment benefits, Barrett was required to sign documents stating that he was capable of working and seeking work. This statement is clearly inconsistent with Barrett's claim of disability during the same period.").

Therefore, Mr. Williams's position that the ALJ improperly evaluated him under the Eleventh Circuit pain standard is not well-taken. Instead, Mr. Williams's statements to the unemployment benefits agency and his daily living activities as well as the lack of complaints following his total left hip arthroplasty provide specific and sufficient reasons for doubting the claimed disabling degree of Mr. Williams's subjective allegations. Alternatively, to the extent that the ALJ did not effectively discredit Mr. Williams's subjective complaints, such error was harmless because substantial evidence otherwise exists in the record to support the ALJ's credibility assessment of him and the related determination that his subject complaints did not render him disabled within the meaning of the Act.

## II. THE ALJ'S RFC DETERMINATION THAT MR. WILLIAMS CAN PERFORM A REDUCED RANGE OF LIGHT WORK IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Mr. Williams also maintains that the ALJ erred in determining that could perform a reduced range of light work because a RFC for the full range of sedentary work would better comport with the evidence. (Doc. 10 at 6). Specifically, Mr. Williams argues that an RFC finding of sedentary was appropriate in light of the RFC assessment (Tr. 180-87) completed by Richard Schmidt ("Mr. Schmidt"), a single decision maker ("SDM"). (Doc. 10 at 6). This RFC assessed an ability to stand/walk for at least two hours, which Mr. Williams contends is short of the stand/walk

requirement for light work by two hours but meets the requirement of at least two hours for sedentary work. (Doc. 10 at 6).

Alabama uses a SDM model in which state disability examiners make initial disability determinations without requiring the signature of a medical or psychological consultant. 73 Fed. Reg. 12495. There is no indication that Mr. Schmidt is a physician or has any medical training. An RFC assessment completed by a disability specialist is entitled to no weight. *Hovey v. Astrue*, 2010 U.S. Dist. LEXIS 129811, at *46 n.19 (M.D. Ala. Dec. 8, 2010); *Casey v. Astrue*, 2008 U.S. Dist. LEXIS 47515, at *12-13 n.3 (S.D. Ala. June 19, 2008). Therefore, the ALJ did not err in failing to adopt the SDM's opinion that Mr. Williams could stand/walk for a total of at least 2 hours in an 8-hour workday.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence.

**DONE** and **ORDERED** this the 28th day of March, 2011.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge